IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division



UNITED STATES OF AMERICA,

v.

**CRIMINAL ACTION NO. 2:12cr105**

TROY BRANDON WOODARD,

Defendant.

### *MEMORANDUM OPINION AND ORDER*

Before the Court is Defendant Troy Brandon Woodard's ("Brandon Woodard" or "Defendant") Motions for Judgment of Acquittal and New Trial, pursuant to Federal Rules of Criminal Procedure 29(c) and 33. (ECF Nos. 443, 448, and 450). The Defendant and the Government have fully briefed this matter and it is now ripe for disposition. For the reasons stated herein, Defendant's Motions are **DENIED**.

### I. FACTUAL AND PROCEDURAL HISTORY

On July 11, 2012, the Government filed a twenty-five (25) count Indictment against Defendants Edward J. Woodard, Simon Hounslow, Stephen G. Fields, Brandon Woodard, Thomas Arney, and Dwight Etheridge. On December 20, 2012, a federal grand jury returned a twenty-six (26) count Superseding Indictment against the Defendants. The charges against the Defendants stem from and are alleged to have contributed to the collapse of the Bank of the Commonwealth (the "Bank") in 2011.

On March 19, 2013, a jury trial commenced in the United States District Court for the

1

Eastern District of Virginia, before the Honorable Raymond A. Jackson. Trial in this case lasted approximately ten weeks. After the United States concluded its presentation of evidence, counsel for Defendant moved for a judgment of acquittal on all counts, pursuant to Federal Rule of Criminal Procedure 29(a). The Court reserved its ruling on Counts 16 through 18, and denied Defendant's motion on the remaining counts. On May 14, 2013, at the close of all evidence, Defendant renewed his motion for judgment of acquittal. The Court denied the motion and submitted all counts to the jury. On May 24, 2013, the jury returned a verdict finding Defendant Brandon Woodard guilty of Conspiracy to Commit Bank Fraud in violation of 18 U.S.C § 1349 and three counts of Unlawful Participation in a Loan in violation of 18 U.S.C § 1005. Defendant now moves the Court to grant a new trial and judgment of acquittal on all counts.

## II. LEGAL STANDARD

Rule 29 of the Federal Rules of Criminal Procedure ("Rule 29") provides that "[i]f the jury has returned a guilty verdict, the court may set aside the verdict and enter an acquittal" where the defendant has successfully challenged the sufficiency of the evidence used to convict him. FED. R. CRIM. P. 29(c)(2). "A defendant challenging the sufficiency of the evidence to support his conviction carries a heavy burden." *United States v. Beidler*, 110 F.3d 1064, 1067 (4th Cir. 1997) (citation omitted). In reviewing a Rule 29 challenge to a conviction, the Court inquires whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Johnson*, 55 F.3d 976, 979 (4th Cir. 1995) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). Deference to the trier of fact requires that the court "construe the evidence in the light most favorable to the Government, assuming its

2

credibility, drawing all favorable inferences from it, and taking into account all the evidence, however adduced." *Johnson*, 55 F.3d at 979.

In its sufficiency review, a court considers both circumstantial and direct evidence. *United States v. Martin*, 523 F.3d 281, 289 (4th Cir. 2008); *United States v. Jackson*, 863 F.2d 1168, 1173 (4th Cir. 1989) (noting "circumstantial evidence is treated no differently than direct evidence, and may be sufficient to support a guilty verdict even though it does not exclude every reasonable hypothesis consistent with innocence"). However, assessing the credibility of witnesses is within the sole province of the jury. *See Johnson*, 55 F.3d at 979; *United States v. Uzenski*, 434 F.3d 690, 700 (4th Cir. 2006). The uncorroborated testimony of a single witness may be sufficient to sustain a guilty verdict; even if that witness is an accomplice, co-defendant, or informant. *See United States v. Wilson*, 115 F.3d 1185, 1189-90 (4th Cir. 1997); *United States v. Manbeck*, 744 F.2d 360, 392 (4th Cir. 1984); *United States v. Arrington*, 719 F.2d 701, 705 (4th Cir. 1983).

Federal Rule of Criminal Procedure 33 ("Rule 33") provides, in part, that "the court may vacate any judgment and grant a new trial if the interest of justice so requires." FED.R.CRIM.P. 33(a); *Arrington*, 757 F.2d at 1485 (citations omitted) ("When the evidence weighs so heavily against the verdict that it would be unjust to enter judgment, the court should grant a new trial"). In deciding a motion for a new trial, a court is not constrained by the requirement that it view the evidence in the light most favorable to the Government and thus, may evaluate the credibility of the witnesses. However, the United States Court of Appeals for the Fourth Circuit ("Fourth Circuit") instructs that a reviewing court "should exercise its discretion to award a new trial sparingly, and a jury verdict is not to be overturned except in the rare circumstance when the

3

evidence 'weighs heavily' against it." *United States v. Smith*, 451 F.3d 209, 216-17 (4th Cir. 2006) (citation omitted).

## III. DISCUSSION

A.     **Motion for Judgment of Acquittal**

  *i. Count 1: Conspiracy to Commit Bank Fraud*

Defendant challenges the sufficiency of the evidence used to convict him of conspiracy to commit bank fraud and unlawful participation in multiple loans. The gravamen of the Government's case at trial was a conspiracy, the purpose of which was to hide the true financial condition of the Bank. The Government alleged that the conspiracy involved reciprocal relationships between Bank insiders and certain troubled borrowers, whereby such troubled borrowers performed favors for Bank insiders in exchange for preferential treatment. The Government alleged that Defendant Brandon Woodard, an employee of the Bank's wholly-owned subsidiary and son of the Chief Executive Officer, was one of the Bank insiders who personally benefitted from these favors. Over the course of the ten week trial, the Government called 46 witnesses, including Defendant's loan assistant and his former business partner.

Importantly, the jury heard testimony from the two troubled borrowers who performed the favors that benefitted Defendant. Eric Menden and George Hranowskj testified that they agreed to purchase three of Defendant's distressed properties at the behest of his father, in exchange for preferential treatment on their loans with the Bank. Eric Menden further testified that at one point, he gave Defendant a large sum of case wrapped in a bag.

In addition, the jury heard evidence that Defendant himself received preferential treatment as part of the conspiracy to defraud the Bank. This preferential treatment was alleged

4

to have included Defendant's receipt of over $2 million in favorable loans to the detriment of the Bank. In support of this charge, the Government introduced an email Defendant sent to his business partners describing the fallout from a shareholder complaint about questionable loans Defendant received from the Bank. In that email, Defendant informed his partners that "...some of the mess is due to us having been given these loans...since none of us could qualify for them." Gov't Ex. 16C. In light of the evidence presented at trial, the Court finds that the jury's finding of guilt on the conspiracy charge is supported by sufficient evidence.

### ii. Counts 16-18: Unlawful Participation in a Loan

The jury convicted Defendant Brandon Woodard and his father Edward Woodard of Unlawful Participation in a Loan on Counts 16-18. On these counts, the Government alleged that Edward Woodard pressured two troubled borrowers to "bail out" his son by purchasing his son's failed investment properties and personal condominium using loans from the Bank. The Government asserted that these loans were part of the $40 million loan portfolio to troubled borrowers Menden and Hranowskj that brought down the Bank.

To establish that Defendant unlawfully participated in a loan, the Government was required to prove that he benefitted from a loan with the intent to defraud the Bank. *See* 18 U.S.C. § 1005. Specific intent to defraud may be inferred from the totality of the circumstances and need not be proven by direct evidence. *United States v. Harvey*, 532 F.3d 326, 334 (4th Cir. 2008). The Government's primary contention at trial was that Defendant intended to defraud the Bank by indirectly causing numerous fraudulent loans to be made and "routinely and actively exploiting his father's power and position for his own personal gain." Gov't.'s Resp. at 7. During trial, the jury saw numerous emails from Defendant to his father asking him to arrange

5

the sale of his distressed properties to Menden and Hranowskj. Further, both Menden and

Hranowskj testified that they agreed to purchase Defendant's properties in exchange for

preferential treatment. In addition to his live testimony, the Government introduced a letter from

Hranowskj written to one of the co-Defendants in which Hranowskj expressed his "deep[]

concern[] with your decision to . . . ignore the promises made to us by Ed Woodard . . .[l]et us

not forget how we are bailing out Ed's son on his condo at a price that is not supported by the

market." Gov't. Ex. 1E-50.

The jury could have reasonably concluded that Defendant was not an innocent bystander,

but was instead an active member of the conspiracy leveraging his father's power for his own

benefit. Menden and Hranowskj testified to Defendant's in-depth involvement in the conspiracy

that led them to expect Bank favors in return for their purchase of Defendant's properties. The

Government also provided documentary evidence in the form of HUD-1 settlement statements,

emails, and contracts to support its contention that Defendant knew the Bank was financing these

troubled borrowers' purchases of his properties. *See also* Gov't. Ex. 18I1-2 (containing emails

from Defendant to his father requesting updates on the status of loans to Menden and

Hranowskj).

Defendant need not have been involved in the administrative process of funding the loans

or directly causing them to be made to be found culpable under § 1005. *See United States v.

McCord*, 33 F.3d 1434, 1449-50 (5th Cir. 1994); *United States v. Payne*, 750 F.2d 844, 854-855

(11th Cir. 1985) (holding that conviction under the unlawful participation statute does not require

that defendant had some "control" over the wrongful act that caused harm to the bank). The

plain language of the statute extends its reach to anyone who *"participates or shares in or*

*receives (directly or indirectly)* any money, profit, property, or benefits through any transaction, loan, commission, contract, or any other act of any such financial institution." 18 U.S.C. § 1005 (emphasis added).

The jury heard testimony that, as a member of the conspiracy, Defendant was keenly aware of the reciprocal arrangement between Bank insiders and troubled borrowers. The Government used Defendant's own words to support a finding of guilt by introducing an email from Defendant to his father asking, "can you please see if george and eric will buy the condo, I am really worried it will not sell and if I have to pay a realtor, I will end up losing money . . . ." Gov't Ex. 18B. The Board of Directors then voted on two Bank loans that were increased to give Hranowskj and Menden money to purchase Defendant Brandon Woodard's condo. Gov't Ex. 18E, 18H. The jury then saw evidence that Defendant Brandon Woodard earned nearly $70,000 from the transaction. Gov't Ex. 18K.

Lastly, Defendant testified at trial and spent considerable time rebutting each of the charges in the Superseding Indictment. As final arbiters of the truth, the jury weighed the credibility of Defendant's claims against the evidence supporting his guilt. Based on the evidence, a rational jury could infer that, under the totality of the circumstances, Defendant did commit the crimes of which he was charged. Accordingly, the Court will not disturb the jury's verdict. Defendant's Motion for Judgment of Acquittal is **DENIED**.

## B. Motion for a New Trial

A new trial is a drastic remedy intended for the rare case. *United States v. Chin*, 181 F.3d 92 (4th Cir. 1999) (unpublished). A district court should exercise its discretion to grant a new trial "sparingly" and "only when the evidence weighs heavily against the verdict." *United States*

*v. Wilson,* 118 F.3d 228, 237 (4th Cir. 1997); *United States v. Arrington,* 757 F.2d 1484, 1486 (4th Cir. 1985).

After thoroughly reviewing all the evidence and considering the arguments from both parties, the Court finds that the interests of justice do not require a new trial. *See Arrington,* 757 F.2d at 1486. As discussed above, abundant evidence supports the jury's verdict. Accordingly, Defendant's Motion for a New Trial is **DENIED.**

### IV. CONCLUSION

The Court conducted a lengthy trial in this case, during which the Government presented the testimony of numerous witnesses and introduced hundreds of documents. The jury had sufficient evidence to support its guilty verdict. For the reasons stated above, Defendant's Motions for a Judgment of Acquittal and New Trial are **DENIED.** The Court **DIRECTS** the Clerk to send a copy of this Memorandum Opinion and Order to counsel and parties of record. **IT IS SO ORDERED**.

Raymond A. Jackson
United States District Judge

Norfolk, Virginia
August /5, 2013

8